UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MATTHEW HOWARD,

        Plaintiff,

v.                              Civil Action No. 2:17cv302

PLAIN GREEN, LLC and
TRANSUNION, LLC,

        Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

In this suit under the Fair Credit Reporting Act ("FCRA"), Plaintiff Matthew Howard ("Howard") alleges Defendants Plain Green, LLC ("Plain Green"), and TransUnion, LLC (collectively "Defendants") violated provisions of the FCRA by failing to investigate and remedy inaccurate information published in his consumer credit report. See Compl. ¶¶ 25-35 (ECF No. 1-1).[1] Plain Green moved to dismiss the claims, arguing that the court lacks subject matter jurisdiction on the basis of tribal immunity, or in the alternative, that Howard failed to state a claim for which relief can be granted. See Def.'s Mem. Supp.

---

[1] Howard originally filed his Complaint in the Circuit Court for the City of Norfolk. See Compl. (ECF No. 1-1). TransUnion properly removed the case to this court as it involves questions of federal law. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Mot. to Dismiss 1-2 (ECF No. 14). Howard argues that tribal immunity does not apply to Plain Green, and that he has otherwise met the pleading requirements of Federal Rule of Civil Procedure 12(b)(6). See Pl.'s Mem. Opp'n Mot. to Dismiss 1-2 (ECF No. 18). The district court referred the motion pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). For the reasons detailed below, the court finds that Plain Green is immune from suit based on its affiliation with a federally recognized Indian Tribe. As a result, the court lacks subject matter jurisdiction, and the district court should grant the Motion to Dismiss (ECF No. 13).

## I. BACKGROUND

This suit arises from a dispute over the accuracy of credit information that appeared on Howard's consumer credit report. Howard is a resident of Norfolk, Virginia, who borrowed money through Plain Green's online lending service. See Compl. ¶¶ 1, 6 (ECF No. 1-1). The inaccurate information in question was reported on Howard's consumer credit report through TransUnion, LLC, the other named defendant in this case.[2] See id. at ¶

Plain Green is a lending company that was formed by the Chippewa Cree Indians of the Rocky Boy's Reservation ("the Tribe"), which is a federally recognized Indian tribe with a reservation in Montana. The company was chartered in 2010 by

---

[2] TransUnion did not join Plain Green in its Motion to Dismiss.

the Tribe's Business Committee[3] "to promote the general welfare of the Tribe." See Def.'s Mem. Supp. Mot. to Dismiss 2 (ECF No. 14); see also Chippewa Cree Tribe of the Rocky Boy's Reservation Resolution [hereinafter "Tribe Resolution"] No. 39-15 (ECF No. 14-1, at 1-2). According to Defendant, Plain Green operates as an "economic arm" of the Tribe, and is designed to "increase tribal revenues; serve the social, economic, educational, and health needs of the Tribe; and to 'enhance the Tribe's economic self-sufficiency and self-determination.'" Def.'s Mem. Supp. Mot. to Dismiss 2 (ECF No. 14) (quoting Tribe Resolution No. 39-15, at 1 (ECF No. 14-1)). The company is owned by the Tribe though a holding company, Atoske Holding Company. See First Amend. Articles of Organization (ECF No. 14-1, at 13).[4] Plain Green's Board of Directors consists of five Managing Members appointed by the Tribe's Business Committee. Id. at 7. At least three of Managing Members must be members of the Tribe, and one must be a member of the Tribe's Business Committee. Id. The company is regulated by the Tribe's Lending and Regulatory Code. See Tribal Lending & Regulatory Code (ECF No. 19-1).

---

[3] The Tribe's Business Committee is the governing body. See Def.'s Reply Supp. Mot. to Dismiss 10 (ECF No. 19).
[4] Upon its foundation in 2013, Plain Green was owned by the Tribe directly. See Articles of Organization (ECF No. 14-1, at 3). Ownership was apparently transferred to Atoske Holding Company in October 2016, but that holding company itself is wholly-owned by the Tribe. See First Amend. Articles of Organization (ECF No. 14-1, at 13).

3

On March 24, 2016, Howard and Plain Green entered into an agreement concerning the balance of a loan Howard had previously obtained through the company. The agreement required Howard to make three payments of $410.00. See Compl. ¶ 9 (ECF No. 1-1). Once the payments were made, the debt would be considered settled and the account would be closed. Id. Although Howard apparently made the payments in accordance with the terms of the parties' agreement, his consumer credit report indicated that the account was "charge[d] off," and had both an outstanding and past due balance of $721.00. Id. at ¶¶ 11-12.

On February 10, 2017, Howard sent a letter to Plain Green and TransUnion, through counsel, disputing the credit information shown on his report. Id. at ¶ 14. By April 2017, the disputed information on Howard's report had not been removed. Id. at ¶ 16. As a result, Howard filed this suit, alleging that TransUnion and Plain Green had violated multiple provisions of the FRCA by failing to investigate or correct the information. Id. at ¶¶ 17-24. Plain Green now moves to dismiss the claims against it.

## II. STANDARD OF REVIEW

Plaintiff has the burden of proving that subject matter jurisdiction exists. See Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.

1991) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). And a defense of sovereign immunity deprives the court of subject matter jurisdiction. Global Mail Ltd. v. U.S. Postal Service, 142 F.3d 208, 210 (1998). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768 (citations omitted). The motion to dismiss should be granted pursuant to Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citations omitted).

### III. ANALYSIS

#### A. The Court does not have Subject Matter Jurisdiction over the Claims against Plain Green

One of the threshold requirements that must be satisfied before deciding any case is subject matter jurisdiction. If the court lacks subject matter jurisdiction, the case must be dismissed. See Fed. R. Civ. P. 12(b)(1). When an entity enjoys immunity from suit, the court lacks subject matter jurisdiction. See Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751 (1998). And, "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has

authorized the suit or the tribe has waived its immunity." Id. at 754. So called "tribal immunity" applies to both governmental and commercial activities of the tribe, and there is no requirement that the alleged activities occur on tribal land. See id. ("To date, our cases have sustained tribal immunity from suit without drawing a distinction based on where the tribal activities occurred."). Thus, the Supreme Court has "time and again treated the 'doctrine of tribal immunity [as] settled law' and dismissed any suit against a tribe absent congressional authorization (or a waiver)." Michigan v. Bay Mills Indian Community, 134 S. Ct. 2024, 2030-31 (2014) (quoting Kiowa, 523 U.S. at 756).

Although tribal immunity is settled law and can only be abrogated by Congress or waived, the tribe at issue here – the Chippewa Cree Indians of the Rocky Boy's Reservation – is not a named party in the suit. And so the principle issue is whether Plain Green, a commercial entity created by and affiliated with the Tribe, can invoke tribal immunity to avoid suit.[5] Plain

---

[5] Plain Green argues that it is Howard's burden to demonstrate that tribal sovereign immunity does not bar jurisdiction in this case, and because Howard has not offered evidence to establish that tribal immunity should not apply, the jurisdictional inquiry is complete and Plain Green should prevail. However, even though Howard does ultimately shoulder the burden of establishing that subject matter jurisdiction exists, see Evans, 166 F.3d at 647, Plain Green's entitlement to tribal immunity is not inherent or a matter of settled law. If the Tribe was named in this suit, further analysis may be unnecessary. But because Plain Green is not an Indian tribe itself, rather an affiliated commercial entity, the court must determine

6

Green argues that it is entitled to tribal immunity because it is "an arm of the tribe." See Def.'s Mem. Supp. Mot. to Dismiss 6 (ECF No. 14). Howard argues that Plain Green's "formal and functional" relationship with the Tribe is not sufficient to invoke immunity. Because the uncontroverted evidence shows that Plain Green was created and is largely controlled by the Tribe, it should be considered "an arm of the tribe," and thus entitled to tribal immunity.

1. "Arm of the Tribe"

Although the Supreme Court has not addressed the issue directly, lower courts have held that "[t]ribal sovereign immunity may extend to subdivisions of a tribe, including those engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity." Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173, 1183 (10th Cir. 2010); see also Everette v. Mitchem, 146 F. Supp. 3d 720 (D. Md. 2015). Courts have identified different factors to consider in deciding whether an entity is an "arm of the tribe." For example, Plain Green advocates for the Colorado Supreme Court's analysis, which asks

---

whether it enjoys the Tribe's protection from suit. See, e.g., White v. Univ. of Cal., 765 F.3d 1010, 1025 (9th Cir. 2014) (upholding district court's denial of jurisdictional discovery after concluding entity was an "arm of the tribe."); see also Everette v. Mitchem, 146 F. Supp. 3d 720, 722-23 (D. Md. 2015).

"(1) whether the tribes created the entities pursuant to tribal law; (2) whether the tribes own and operate the entities; and (3) whether the entities' immunity protects the tribes' sovereignty." Cash Advance & Preferred Cash Loans v. State, 242 P.3d 1099, 1110-11 (Colo. 2010).

Federal courts have not settled on a uniform test, but the Tenth Circuit's analysis is the most comprehensive, considering:

> (1) [the entity's] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities.

Breakthrough, 629 F.3d at 1181. The Breakthrough test has not been adopted by the Fourth Circuit - which has yet to address the issue - but it has been cited by lower courts within the Circuit. See, e.g., Everette, 146 F. Supp. 3d at 723. Plain Green first argues that it should not be held to this more demanding standard because any such analysis is a judicially imposed limit on its sovereign immunity, which only Congress can abrogate. But Plain Green is only entitled to tribal immunity if it is an "arm of the tribe." The method of analyzing that question cannot impose a judicial restraint on "immunity" when the existence of immunity is conditioned on the outcome of that analysis in the first instance. Nonetheless - as described below

8

– Plain Green is an "arm of the tribe" based on the six factors enumerated in the Tenth Circuit's analysis. As a result, it is immune from suit under existing tribal immunity precedent.

    a.   *Breakthrough* Factors

The first factor in Breakthrough asks about the entity's method of creation. In this case, this factor weighs in favor of tribal immunity. Plain Green was formed by the Tribe's governing body under the laws of the Tribe. See Articles of Organization (ECF No. 14-1, at 3). In doing so, the Tribe expressly "recognize[d] the responsibilities of Plain Green, LLC, as the economic arm of the Tribe." Id. And Plain Green operates pursuant to tribal law. Id. In other words, in considering the broader question of whether Plain Green was created as an "arm of the tribe," the documentation of its creation suggests that it was.

The second factor, the purpose of the entity, weighs slightly in favor of immunity because the Tribe created Plain Green with the express purpose of "serv[ing] the social, economic, education and health needs of the Tribe; increase[ing] Tribal revenues; enhance[ing] the Tribe's economic self-sufficiency and self-determination; and provid[ing] positive, long-term social, environmental, and economic benefits to Tribal members. . . ." Id. Although the company is primarily engaged in online consumer lending occurring in areas not controlled by

the Tribe, it is clear from the text of Plain Green's charter that it was created for the Tribe's financial benefit. In addition, Plain Green's offices are located on the reservation, and most of its employees are tribal members. See Def.'s Reply Supp. Mot. to Dismiss 2 (ECF No. 19). This satisfies the second factor of <u>Breakthrough</u>. See 629 F.3d at 1192 (holding second factor satisfied where entity is created for the financial benefit of the Tribe).

The third factor looks to the structure, ownership, and management of the entity. Again, this factor weighs in favor of finding that Plain Green is an arm of the tribe, and entitled to immunity. Concerning ownership, Plain Green is wholly-owned by the Tribe through a holding company. See First Amend. Articles of Organization (ECF No. 14-1, at 13). Before the company was placed under the holding company in October 2016, it was owned directly by the Tribe. See Articles of Organization (ECF No. 14-1, at 3). In regard to structure and management, Plain Green's Board of Directors consists of five Managing Members appointed by the Tribe's Business Committee (i.e., the governing body of the Tribe). <u>Id.</u> at § 7 (ECF No. 14-1, at 7-8). At least three of Managing Members must be members of the Tribe, and one must be a member of the Tribe's Business Committee. <u>Id.</u> The Business Committee also retains the right to remove Managing Members. <u>Id.</u> Together, the structure, ownership, and

management of Plain Green indicate that it functions as an economic arm of the Tribe, and thus satisfies the third factor of Breakthrough.

The fourth factor asks whether the Tribe intended to confer tribal immunity onto Plain Green. The answer is unequivocally yes. Plain Green's Articles of Organization state, "[t]he Tribe hereby confers on [Plain Green] sovereign immunity from suit to the same extent that the Tribe would have such sovereign immunity if it engaged in the activities undertaken by Plain Green." First Amend. Articles of Organization § 4.2 (ECF No. 14-1, at 14). The fourth factor is thus satisfied by the Tribe's express intent to confer its tribal immunity onto Plain Green. See Breakthrough, 629 F.3d at 1194.

The fifth factor concerns the financial relationship between the Tribe and Plain Green. As described above, the Tribe has - since its inception - owned Plain Green. This weighs in favor of considering Plain Green to be an arm of the tribe because all of its profits inure to the benefit of the Tribe. The fifth factor is satisfied.

The sixth and final factor considers whether Plain Green serves the purposes of sovereign immunity. This requires an examination of "the policies underlying tribal sovereign immunity and its connection to tribal economic development, and whether those policies are served by granting immunity to the

11

economic entity." Id. at 1187. The economic policies "include protection of the tribe's monies, as well as preservation of tribal cultural autonomy, preservation of tribal self-determination, and promotion of commercial dealings between Indians and non-Indians." Id. at 1188 (internal citations and quotation marks omitted). The evidence offered by Plain Green suggests that this factor weighs in favor of immunity. To begin with, the Articles of Incorporation expressly state that the Plain Green's purpose is to serve the economic needs of the Tribe, increase Tribal revenues, and to enhance the Tribe's economic self-sufficiency and self-determination. See First Amend. Articles of Organization § 3.1 (ECF No. 14-1, at 13). Moreover, it is obvious that Plain Green promotes commercial dealings between the Tribe and non-Indians – Howard's relationship, spoiled though it may have been, is an example of this. Plain Green proffers that its revenues are used to provide a variety of social services and other benefits for the Tribe. See Def.'s Reply Supp. Mot. to Dismiss 12 (ECF No. 19). Howard offers no evidence to refute this. Accordingly, the sixth factor of Breakthrough is satisfied because Plain Green promotes economic development and self-sufficiency, which is a central purpose underling tribal immunity. See Kiowa, 523 U.S. at 757.

Having concluded that Plain Green satisfies the factors necessary for it to be considered an "arm of the tribe," the company should enjoy the privilege of tribal immunity unless Congress has abrogated that immunity or it has been waived. Neither abrogation nor waiver has occurred here.

2. Abrogation or Waiver

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa, 523 U.S. at 754. Abrogation or waiver "cannot be implied but must be unequivocally expressed." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978); see also Everette, 146 F. Supp. 3d at 723.

In this case, Howard has not argued that Plain Green or the Tribe has waived its immunity with respect to these claims. And express language in the Articles of Organization show that the Tribe intended to confer Plain Green its sovereign immunity to the fullest extent possible. See First Amend. Articles of Organization § 4.2 (ECF No. 14-1, at 13). Howard does argue, tangentially, that the FCRA may abrogate tribal immunity. Specifically, he argues that the Supreme Court has held that tribes are subject to regulation when conducting business off the reservation, and that Plain Green is thus subject to the FCRA. However, Howard's argument is not supported by the existing tribal immunity precedent.

To begin with, although the Supreme Court has held that "a State may have the authority to tax or regulate tribal activities occurring within the State but outside Indian country," it followed that pronouncement by clarifying that "[t]o say substantive state laws apply to off-reservation conduct, however, is not to say that a tribe no longer enjoys immunity from suit." See Kiowa, 523 U.S. at 755 (citations omitted). In other words, "[t]here is a difference between the right to demand compliance with state laws and the means available to enforce them." Id. Of course, the Supreme Court's explanation in Kiowa only applies in the context of state regulation, as Congress has a unique authority to abrogate tribal immunity through explicit legislation. Id. at 759. But Howard's argument fails to appreciate that tribal immunity from suit can only be abrogated by an act of Congress. And the fact that Congress regulates certain commercial conduct does not mean that it intended to subject sovereign Indian tribes to suit in federal court to enforce those measures. Again, the Kiowa Court explicitly recognized that immunity from suit has no geographical boundary in Supreme Court precedent. Id. at 754.

Howard cites to Colorado v. Western Sky Financial, LLC, 845 F. Supp. 2d 1178 (2011), to argue that tribal immunity does not apply because the economic activity here - like in Western Sky - was conducted through the Internet. But Western Sky is

14

completely inapposite. The court in that case was deciding whether a lawsuit alleging violations of Colorado's consumer protection laws was properly removed to federal court. The defendant, a lending company owned by an individual member of the Cheyenne River Sioux Tribe, had removed the case citing federal question jurisdiction, and argued in part that Congress' complete purview over the regulation of Indian affairs preempted any state jurisdiction. The court denied the preemption argument, concluding that the case did not involve regulation of Indian affairs because little to none of the alleged conduct had occurred on the reservation. Western Sky, 845 F. Supp. 2d at 1181. Preemption is not an issue in this case, and the court's analysis of preemption in Western Sky has no relevance to the issues here. In fact, in remanding that case, the court explicitly declined to analyze the issue that is relevant here – tribal immunity – stating only that immunity was a defense to state jurisdiction, not a proper basis for removal. See id. Thus, Western Sky does not support any rule that conditions tribal immunity on the location of the challenged conduct.

In this case, Plain Green is only subject to suit if the Fair Credit Reporting Act explicitly abrogates tribal immunity. The court finds that it does not. Although the Supreme Court has not addressed this issue directly, the Seventh Circuit has analyzed whether a tribe could be sued under the Fair and

Accurate Credit Transaction Act ("FACTA"), which is an amendment to the FCRA. See Meyers v. Oneida Tribe of Indians of Wis., 836 F.3d 818 (7th Cir. 2016). Importantly, although the claims arose under an amendment to the FCRA, the Seventh Circuit's analysis was focused on the definition of "person" - which is shared by both the FCRA and FACTA under 15 U.S.C. § 1681a(b). See id. A "person" subject to the FCRA is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). And the court considered whether the phrase "any government," which appears in the definition was intended to include Indian tribes. The court held that it was not. The court observed that Congress knew how to abrogate tribal immunity, as it had done so explicitly by including "Indian tribe" in the appropriate definition. Meyers, 836 F.3d at 824-26. Because no such reference appeared in the FACTA, the court declined to read the phrase "government" to include them. Endorsing the district court's reasoning as "hit[ting] the nail on the head," the court wrote:

> It is one thing to say "any government" means "the United States." That is an entirely natural reading of "any government." But it's another thing to say "any government" means "Indian Tribes." Against the long-held tradition of tribal immunity . . . "any government" is equivocal in this regard. Moreover, it is one thing to read "the United States" when Congress

says "government." But it would be quite another, given that ambiguities in statutes are to be resolved in favor of tribal immunity, to read "Indian Tribes" when Congress says "government."

Id. at 826 (quoting Meyers v. Oneida Tribe of Indians of Wis., No. 15-cv-445, 2015 WL 13186223 *1, *2 (E.D. Wis. Sept. 4, 2015) (emphasis in original).

This court agrees with the Seventh Circuit's reasoning that the definition of "any government" in the FCRA is not meant to include Indian Tribes. The Supreme Court stated emphatically in Kiowa and Bay Mills that tribal immunity must be explicitly abrogated by Congress. As the court reasoned in Meyers, the historical context surrounding the definition of "government" – particularly as stated by Congress – leaves almost no room for inclusion of Indian Tribes. And at best, the definition is ambiguous, and such ambiguity is resolved in favor of immunity. See Meyers, 836 F.3d at 824. Nowhere else in the FCRA does Congress explicitly abrogate tribal immunity, and the court refuses to read in any such abrogation here. See Kiowa, 523 U.S. at 759-60.

Howard argues that Meyers is distinguishable from this case because the violations alleged in that case involved purchases made voluntarily on a reservation – that the plaintiff willingly subjected himself to the tribe's laws. See Pl.'s Mem. Opp'n Mot. to Dismiss 6 (ECF No. 18). This argument misses the point.

The relevant portions of the Meyers decision did not depend on, or even consider, where the alleged violations took place. The decision's import to this case is its analysis of the definition of "any government." The meaning of those words does not change - at least with respect to the statute - simply because someone made purchases on Indian territory. Congress did not abrogate tribal immunity under the FCRA for some actions but not for others. Again, any geographic limitation on tribal immunity from suit has thus far been expressly rejected by the Supreme Court. See Kiowa, 523 U.S. at 754.

In sum, Plain Green is entitled to invoke tribal immunity because it is an "arm of the tribe." Breakthrough, 629 F.3d at 1181. That tribal immunity has not been waived by the company, and it has not been abrogated by Congress. See Meyers, 836 F.3d at 826. Because Plain Green is immune from suit under the doctrine of tribal immunity, this court lacks subject matter jurisdiction to hear the claims against it. See Kiowa, 523 U.S. at 760.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the district court GRANT Defendant Plain Green's Motion to Dismiss for lack of Subject Matter Jurisdiction (ECF No. 13).

## V. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. Thomas v.

Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/ *[signature]*
Douglas E. Miller
United States Magistrate Judge

August 7, 2017